IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES SAN MARCO and MINDY SAN MARCO, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>DUVERA BILLING SERVICES, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 2:23-cv-173<br>)   Magistrate Judge Patricia L. Dodge<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# **OPINION**[1]

Pending before the Court is Defendant Duvera Billing Services, LLC's ("Duvera") Motion to Dismiss and to Compel Individual Arbitration of the Claims of Plaintiffs (ECF No. 7). For the reasons that follow, the Motion will be denied without prejudice to renew after a limited period of discovery.

## I.   Background

On December 28, 2022, Plaintiffs James San Marco and Mindy San Marco ("Plaintiffs") filed this class action in the Court of Common Pleas for Allegheny County, Pennsylvania (Case No. GD-22-016171). (ECF No. 1 ¶ 1; ECF No. 1-2.) Duvera timely removed. (*See* ECF No. 1).

Plaintiffs allege that Duvera violated the Pennsylvania Loan Interest and Protection Law, 41 P.S. §§ 101 *et seq.*, the Pennsylvania Consumer Discount Company Act, 7 P.S. §§ 6201 *et seq.*, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201 *et seq.*, the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

Truth-in-Lending Act, 15 U.S.C. §§ 1601 *et seq.*, and the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 *et seq.* when it extended a loan to Plaintiffs with an annual percentage rate of 168.99% to cover the costs of car repair services. (*See generally*, ECF No. 1-2.)

Duvera filed a Motion to Dismiss and to Compel Individual Arbitration of the Claims of Plaintiffs, which is fully briefed and ready for disposition. (ECF Nos. 7, 8, 13, & 16.)

**II.   Relevant Factual Allegations**

According to the Complaint, Duvera offers loans or advances to consumers at auto repair shops, such as National Tire & Battery ("NTB"), pursuant to which the auto repair shops will refer consumers to Duvera for the financing of consumer's outstanding bill with the auto repair shop. (ECF No. 1-2 ¶¶ 8–9.) The financing process occurs through smart phones, whereby the auto repair shop sends a link to the consumer's phone. (*Id.* ¶¶ 11–13.) That link directs the consumer to Duvera's online portal where the consumer applies for credit. (*Id.* ¶¶ 13–15.) Once a consumer inputs their information in the application, Duvera pulls the consumer's credits reports and calculates the interest to be charged. (*Id.* ¶¶ 16–17.) Duvera then advances the funds to the auto repair shop and the consumer must repay Duvera the outstanding balance, plus a finance charge or interest. (*Id.* ¶¶ 18–19.) Plaintiffs assert that the loan terms, including interest rates and annual percentage rates, are not disclosed on the smartphone either before or after the transaction is complete. (*Id.* ¶¶ 11, 20.)

Plaintiffs visited NTB in June 2022 for repair of Plaintiff James San Marco's vehicle. (*Id.* ¶¶ 21–22.) Because Plaintiffs could not pay and would not get their car back unless their bill was paid in full, a manager told Plaintiffs that Duvera offered "90-day interest free loans to pay off Plaintiffs' bill." (*Id.* ¶¶ 23–25.) When Plaintiffs asked how much the loan cost, including the

annual percentage rate, the NTB manager stated he did not know because Duvera—not NTB—issued the loan. (*Id.* ¶¶ 26–27.) NTB sent the link to Mindy San Marco's smartphone, which presented the following information: "the loan amount of $880.14; that payments were to be made every two weeks; that the payment amount would be $72.34; and that payments would be automatically deducted from a linked bank account." (*Id.* ¶¶ 28–30.)

The link then requested that Plaintiff input personal information, including bank account information. (*Id.* ¶ 31.) Plaintiff Mindy San Marco input her father's information (because the loan was taken out in his name). (*Id.* ¶ 32.) "After that, Plaintiff Mindy San Marco clicked a button and the loan transaction was complete." (*Id.* ¶ .3.)

Plaintiffs allege that "[a]t no point did Defendant's loan portal request Plaintiffs' signatures, or display the interest rate, annual percentage rate or cost of Plaintiffs' loan." (*Id.* ¶ 34.) Duvera then began taking $72.34 every two weeks from Plaintiff James San Marco's bank account (but to which both Plaintiffs James and Mindy San Marco contributed money to make payments on Duvera's loan). (*Id.* ¶ 35.) Because Plaintiffs had not received the terms of their loan, they began calling Duvera but were unable to get the requested information. (*Id.* ¶¶ 36–37.) After unsuccessful calls, Plaintiffs made an online account. (*Id.* ¶ 38.) Upon searching for their loan terms, Plaintiff's learned that Duvera's loan had a 168.99% annual percentage rate, meaning that Plaintiffs $880.14 loan costs $1,880.84 with $1,000.70 in interest. (*Id.* ¶¶ 38–40.)

After Plaintiffs made eight payments of $72.34 (a total amount of $578.72), which "barely put a dent in the principal owed on the loan," Plaintiffs froze the bank account, because they did not agree to pay the interest Duvera was trying to charge. (*Id.* ¶¶ 41–44.) Plaintiffs argue that because Duvera is not a bank and is not licensed under any statute, it cannot charge more than 6%

3

interest on loans or advances in Pennsylvania.  (*Id.* ¶¶ 45–49 (citing 41 P.S. § 201(a), 7 P.S. § 6203.A and *Pa Dep't of Banking v. NCAS of Del., LLC*, 948 A.2d 752, 762 (Pa. 2008).)

### III. Standard of Review

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). Although there is a strong federal policy in favor of the resolution of disputes through arbitration, this federal policy favoring arbitration "does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Century Indem. Co.*, 584 F.3d at 523.

"Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citations omitted). However, the FAA's "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.2d 1069, 1073 (5th Cir. 2002)). Instead, courts "turn to 'ordinary state-law principles that govern the formation of contracts'" to determine whether the parties agreed to arbitrate. *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).[2]

---

[2] Under Pennsylvania law, a contract requires: "(1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Kirleis*, 560 F.3d at 160 (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)).

Depending on the nature of the complaint and its supporting documents, a motion to compel arbitration will be evaluated under either the standard set forth in Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773–76 (3d Cir. 2013). "The centerpiece of that framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 217–18 (3d Cir. 2019) (citing *Guidotti*, 716 F.3d at 774–76).

The Third Circuit has held that "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)); *see also Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (in deciding a motion to dismiss, the Court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

In contrast, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," the parties are entitled to discovery on the issue of arbitrability and the Court applies the standard under Rule 56. *Guidotti*, 716 F.3d at 776.

5

## IV. Discussion

The parties focus on two disputes as to whether an agreement to arbitrate exists. The first dispute is broader—whether James San Marco signed the Contract (as defined further below) and was provided proper notice of the Contract's terms.[3] The second is whether Mindy San Marco, a non-signatory to the Contract, may be compelled to arbitrate.

### A. Facts Related to the Contract and Arbitration Clause

It is undisputed that the application for credit, a summary of terms, and Rental Installment Contract/Closed-End Credit Agreement/Consumer Paper (the "Contract") were attached to Plaintiffs' Complaint (*see* ECF No. 1-2 at 24–47), and that the Contract contains an arbitration clause (*see id.* at 28, Section O (the "Arbitration Clause")). Duvera also submitted a copy of the Contract in support of its Motion (*see* ECF No. 8-1 at 10–19). The difference between the two versions is that Plaintiffs' exhibit redacts the Docusign notation, whereas Duvera's version of the Loan Contract shows the Docusign notation.

Plaintiffs' Complaint contains the following facts related to the execution of the Loan Contract. Specifically, Plaintiffs allege that the online loan portal "showed the loan amount

---

[3] Because "[a]rbitration agreements typically reside in larger contracts," or "container contracts," and "an arbitration clause is severable from the contract that contains it, questions about the validity of the container contract go to arbitration." *Carrone v. UnitedHealth Group Inc*, No. 20-2742, 2021 WL 3520809, at *1 (3d Cir. Aug. 11, 2021) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). "For example, a party claiming that the container contract lacked consideration must first adjudicate that claim in arbitration." *Id.* (citing *MXM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 398 n.7 (3d Cir. 2020).) However, "§ 4 of the FAA '"affirmatively requires" a court to decide questions about the formation or existence of an arbitration agreement, namely the element of mutual assent,'" such that "a claim that the container contract lacked mutual assent necessarily puts the existence of the arbitration agreement at issue," and "[s]uch a claim goes straight to court." *Id.* (citing *MXM Constr.*, 974 F.3d at 397–98 (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 109 (3d Cir. 2000)). Thus, "there is a distinction between a dispute as to the *formation* of the container contract (which is a question for the court in the first instance) and a dispute as to its *validity* or *enforceability* (which, if within the scope of the arbitration/delegation clause, should be referred to arbitration)." *Bey v. Crown Asset Mgmt., LLC*, No. 2:20-CV-00715-CCW, 2021 WL 4078657, at *4 (W.D. Pa. Sep. 8, 2021) (emphasis original) (citing *MXM Constr.*, 974 F.3d at 397–98; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 n.2, (2010)); *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 444 n.1 (2006).

($880.14), schedule of payments (biweekly), amount of each payment ($72.34), and that payments would be deducted automatically from a bank account." (ECF No. 13 at 6 (citing ECF No. 1-2 ¶¶ 28–30.)  Plaintiffs further allege that "Mindy San Marco assisted her father with the loan application, which asked for personal information (including a bank account) and to click a button to complete the transaction, but never requested a signature." (*Id.* (citing ECF No. 1-2 ¶¶ 31–34).)  Finally, Plaintiffs allege that they "did not receive the loan terms at that time, or thereafter."  *Id.* (citing ECF No. 1-2 ¶ 36).)

Defendants, on the other hand, respond with facts from a declaration by James F. Ventimiglia III, the Chief Technology Officer ("CTO") of Duvera.  Specifically, that declaration alleges:

> As part of EasyPay's online application, Plaintiff James San Marco was first required to submit information to become pre-qualified. [ECF No. 8-1] ¶ 9. After becoming prequalified, Plaintiff James San Marco was required to complete the application and, when approved, he was presented with the financial terms and the Contract for review.  *Id.* ¶ 10.  As part of EasyPay's online application, there was a large, red box prior to the Contract that informed him: [Please review the contract in its entirety before signing. Once you have completed the review of your contract, you may proceed to sign electronically.  **The option to sign electronically is located at the bottom of the contract.**]  *Id.* ¶ 11.
>
> At the end of the Contract, the online application provided Plaintiff James San Marco with the option to E-Sign the Contract by clicking a box that provided "Proceed to E-Sign Your Contract."  *Id.* ¶ 13.  After selecting that box, he was required to indicate his agreement to use electronic recording and signatures, *i.e.* DocuSign, by checking a box and then clicking "Continue."  *Id.* ¶ 14.  He was then directed to the signature lines of the Contract and was able to navigate through the entire Contract.  *Id.* ¶ 15.

(ECF No. 8 at 2–3.)  Thus, according to Duvera's CTO, "Plaintiff James San Marco could not proceed unless he applied his signature and signed the Contract." (*Id.* at 3 (citing ECF No. 8-1 ¶¶ 15–16).)

B.      The Court Will Order Limited Discovery on the Issues of Arbitrability

Here, in considering the standard set out by the Third Circuit in *Guidotti*, the Court finds that ordering further discovery on the issue of arbitrability, specifically whether an agreement to arbitrate was formed, is appropriate. After such period of limited discovery, the Court will resolve the issue under the Rule 56 standard.

In reaching this conclusion, it is apparent that the parties' procedural posture is somewhat different than the typical case involving a motion to compel arbitration. In most cases, a plaintiff files suit on certain claims without any facts related to arbitration in the complaint. A defendant then responds with a motion to compel arbitration and attaches an arbitration agreement that is considered "integral" to the plaintiff's claims. At that point, the Court considers the face of the complaint and the undisputedly authentic documents upon which the complaint relies to determine whether it is apparent that the claims are subject to an enforceable arbitration agreement.[4]

The difference here is that the factual allegations in Plaintiffs' Complaint had *already* called into question the formation (and therefore the validity and authenticity) of the Contract (which Plaintiffs attached as a copy to their Complaint) *before* Duvera ever filed its Motion to Dismiss and to Compel Individual Arbitration of the Claims of Plaintiffs. Rather than reacting to a motion to compel arbitration with an attached arbitration agreement, Plaintiffs include factual allegations in the Complaint that the Contract was never properly formed.

---

[4] As outlined above, if such agreement *is not* apparent based on complaint and its supporting documents, the parties are entitled to discovery on the issue of arbitrability and the Court applies the standard under Rule 56. *Guidotti*, 716 F.3d at 776. If such agreement *is* apparent based on those documents, the Court considers a motion to compel arbitration under a Rule 12(b)(6) standard without discovery's delay, *unless* plaintiff responds to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, at which point the parties proceed to discovery on arbitrability and the Court applies the Rule 56 standard. *Id.*

8

          i.         **Because the Complaint and Supporting Documents are Unclear Regarding an Agreement to Arbitrate, Limited Discovery is Appropriate**

In reviewing the Complaint and supporting documents, the Court finds that they "are unclear regarding the agreement to arbitrate." *Guidotti*, 716 F.3d at 776. As Duvera asserts (ECF No. 8 at 7), although "well-pleaded allegations must be accepted as true for purposes of this motion, the Court need not accept as true allegations that are directly contradicted by indisputably authentic documents on which the complaint relies, or matters of public record." *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075-76 (E.D. Pa. 2017) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) and *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994)).

Duvera overlooks a key part of this rule (*see* ECF No. 8 at 7), however, because the Court may only consider *indisputably authentic* documents. Here, one of the main premises of the factual allegations in Plaintiff's Complaint calls into question the entire formation process of the Contract. Thus, the Plaintiffs, by way of their Complaint, are necessarily questioning the authenticity of the Contract that they themselves attached as an exhibit to their Complaint.

Although it is undisputed that the face of the Contract contains an arbitration clause, it remains unclear from a review of the Complaint and its supporting documents as to whether there was mutual assent regarding any agreement to arbitrate. *Guidotti*, 716 F.3d at 776. Thus, the Court will order limited discovery on the issue of issue of arbitrability, and after such period, the Court will apply the standard under Rule 56 in resolving a renewed motion.

      ii.   In the Alternative, Because Plaintiffs have Responded to Duvera's Motion with Additional Facts Sufficient to place the Agreement to Arbitrate at Issue, Limited Discovery is Appropriate

Even if the Complaint and its supporting documents were clear regarding the agreement to arbitrate, Plaintiffs have "responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 776.

Although it is true, as Duvera argues, that Plaintiffs have not offered an affidavit in response to Duvera's Motion, Plaintiffs point out that the "'DocuSign Envelope ID' on the documents Defendant submitted is the same for the Contract and for Defendant's 'Application for Credit,' … which suggests these documents were completed at the same time. But completion of the Application for Credit must have preceded the creation of the Contract, as the Contract could not be issued before the Application for Credit was approved." (ECF No. 13 at 9 n.2.)

Duvera argues that that Plaintiffs' implication as to how the "the DocuSign header should, for some reason, change as the contract formation process progresses does not raise an issue of fact." (ECF No. 16 at 3.) In so arguing, Duvera points to the Ventimiglia Declaration to show that the Contract (and associated documents) were executed through one continuous process. (ECF No. 16 at 4 (citing ECF No. 8-1 ¶¶ 9–10, 13–15).)

Duvera asserts that courts routinely rely on declarations such as the Ventimiglia declaration. (ECF No. 8 at 16.) Specifically, Duvera cites to *Lloyd v. Retail Equation, Inc.*, No. 21-17057, 2022 WL 18024204, at *8 (D.N.J. Dec. 29, 2022), for the proposition that the "Court may 'consider statements by those with personal knowledge about what "would have appeared" on a user's screen' when entering into a contract when resolving a motion to compel arbitration." (ECF No. 8 at 15 n.5.) However, the citations in *Lloyd* supporting that proposition are from courts

10

within the Second Circuit and Ninth Circuit,[5] where "[c]ourts deciding motions to compel apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)); *Hansen v. LMB Mortg. Servs.*, 1 F.4th 667, 670 (9th Cir. 2021) (noting that in applying 9 U.S.C. § 4, which sets forth the procedure for addressing a motion to compel arbitration, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure.").

In light of the Third Circuit's distinction between the Rule 12(b)(6) and Rule 56 standards for deciding motions to compel arbitration as set forth in *Guidotti*, if this Court were to consider the Ventimiglia Declaration at all, it would have to do so by applying the Rule 56 standard.

Thus, the Court will order limited discovery on the issue of issue of arbitrability, after which the Court will apply the standard under Rule 56.

> C. The Court Will Not Decide at this Time Whether Plaintiff Mindy San Marco May Be Compelled to Arbitrate Her Claims

Duvera argues that Mindy San Marco does not have an independent claim in this action and that James San Marco and Mindy San Marco cannot avoid the Arbitration Clause by bringing this suit together. (ECF No. 8 at 19.) Duvera further argues that the doctrine of equitable estoppel

---

[5] *See, e.g.*, *Cordas v. Uber Technologies, Inc.*, 228 F. Supp. 3d 985, 988–89 (N.D. Cal. 2017) (relying on testimony about what a prospective user would have seen and had to do to create an account and compelling arbitration where Plaintiff raised "no *genuine* dispute of any *material* fact, and it is proper to conclude, as a matter of law, that he was on notice of [Defendant's] terms and conditions, and assented to them" (emphasis original)); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17CV04570, 2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017) *report and recommendation adopted as modified*, No. 17-CV-4570, 2018 WL 671258, at *3 (S.D.N.Y. Jan. 31, 2018) (ruling that the report and recommendation erroneously suggested that the magistrate judge resolved the dispute concerning the existence of an agreement to arbitrate based on a preponderance of the credible evidence and that instead, when "applying the correct standard," the conclusion should have been phrased as "on the basis of the undisputed facts and 'drawing all reasonable inferences in favor of the non-moving party,' this Court holds that no trier of fact reasonably could have found that an agreement to arbitrate did not exist between the parties").

prevents Mindy San Marco from attempting to avoid the Arbitration Clause, because her claims against Duvera would not exist without the Contract. (ECF No. 8 at 19–23.)

Plaintiffs contends Mindy San Marco has independent claims from those of James San Marco and that she cannot be compelled to arbitrate under any Pennsylvania law contract principles. (ECF No. 13 at 4–7.) Plaintiffs further argue that the question of whether Mindy San Marco, as a non-signatory, may be compelled to arbitrate is a question of law that can be decided under the Rule 12(b) standard without discovery (*id.* at 3).

Because the Court has ordered limited discovery on the issue of whether an agreement to arbitrate was formed, legal questions related Mindy San Marco, as a non-signatory to that Contract, may ultimately be moot. Thus, Duvera's Motion to Compel Mindy San Marco to arbitrate is denied without prejudice to renew after the period of limited discovery.

## V.   Conclusion

For these reasons, Duvera's Motion to Dismiss and to Compel Individual Arbitration of the Claims of Plaintiffs (ECF No. 7), will be denied without prejudice to renew after a limited period of discovery.

An appropriate Order follows.

Dated: April 13, 2023                BY THE COURT:

/s/ Patricia L. Dodge
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE